IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Paul L. McGee, | : | Case No. 1:06-CV-726 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING DEFENDANTS' |
| | : | MOTION TO DISMISS PLAINTIFF'S |
| City of Cincinnati Police Dept., et al., | : | COMPLAINT |
| | : | |
| Defendants. | : | |

This matter comes before the Court on the Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 12.) With his Amended Complaint for Violation of Civil Rights, filed on January 28, 2007, Plaintiff Paul L. McGee brings claims for unlawful search and seizure, excessive force, and deprivation of medical care under 42 U.S.C. § 1983, as well as claims for assault and battery under state law. (Doc. 7.) Plaintiff additionally brings a 42 U.S.C. § 1983 claim against the City of Cincinnati Police Department, alleging that the Police Department developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of the citizens of Cincinnati. The Defendants[1] move to dismiss all of Plaintiff's claims. Plaintiff filed a four-page memorandum in opposition to Defendants' motion, in which Plaintiff cites only once case and addresses only his excessive force claim against Defendant Officers. (Doc. 17.) For the reasons that follow, the Court **GRANTS** Defendants' Motion.

---

[1] Defendants in this action include the City of Cincinnati Police Department as well as Officers Thomas Rackley, Michael Barge, Mark Bode, and Alvin Triggs.

1

**I.     BACKGROUND**[2]

The events in question took place on August 2, 2005.  Officer Rackley and another unidentified officer followed and attempted to pull over Plaintiff McGee in a residential area after McGee allegedly sold illegal drugs to a confidential informant.  (See doc. 17, ex. 1 at 8; doc. 12, ex. D.)  The videotape of the incident shows that McGee failed to stop when Officer

---

[2] In examining the background of this case, the Court considers (1) the facts alleged in Plaintiff's complaint; (2) a police videotape of the incident, recorded by an officer's motor vehicle recorder (see doc. 12, ex. D; doc. 14), Hamilton County, Ohio Municipal Court records (doc. 12, ex. A-C), and a City of Cincinnati Fire Department emergency run report (doc. 12, ex. E), all of which were submitted as exhibits to Defendant's motion to dismiss; and (3) a City of Cincinnati Citizen Complaint Authority report (hereinafter "CCA Report") that Plaintiff submitted along with his Memorandum in Opposition to Defendant's Motion to Dismiss (doc. 17, ex. 1).

Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." Weiner v. Klais and Co., Inc., 108 F.3d 86, 88-89 (6th Cir. 1997).  However, there are exceptions to this rule.  The Court may consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice. Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005) (citing Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360-61 (6th Cir. 2001)).  Under Federal Rule of Evidence 201, a court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute in that [they are] ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Defendants correctly contend that the videotape and other records submitted with its motion to dismiss are public records and that the Court may consider such exhibits without converting the motion to dismiss into a motion for summary judgment.  See e.g., Jackson v. City of Columbus, 194 F.3d 737, 745-46 (6th Cir. 1999) (holding that it was proper for a district court to consider state court records when ruling on a 12(b)(6) motion to dismiss); Kostrzewa v. City of Troy, 247 F.3d 633, 644 (6th Cir. 2001).  Though Plaintiff argues that the "records submitted by Defendant's [sic] are incomplete in that they fail to reference the findings and outcome of the" CCA Report, Plaintiff does not argue that the records themselves are inaccurate.  (Doc. 17 at 1-2.)  Plaintiff does not, for instance, allege that the police video does not provide an accurate or incomplete depiction of the events that occurred on the day of Plaintiff's arrest.  Accordingly, the Court will consider the exhibits submitted by Defendants.

The Court will also consider the CCA Report submitted by Plaintiff.  However, the Court considers this report only to the extent that it sets forth factual findings from the CCA's investigation and does not contain inadmissible hearsay. See Fed. R. Evid. 803(8); Nowell v. City of Cincinnati, No. 1:03cv859, 2006 WL 2619846 (S.D. Ohio Sept. 12, 2006).

Rackley turned on his police sirens. At one point, McGee appears to slow down and pull to the side of the road, but then started driving away again. Shortly thereafter, McGee stopped his car after an undercover police officer drew his weapon and stepped into the road, blocking McGee's path. (Doc. 12, ex. D.) At that time, a number of uniformed and plainclothes officers were present, including Defendant Officers Rackley, Barge, Bode, and Triggs. (Doc. 7 ¶ 5; doc. 17, ex. 1 at 8.)

Almost immediately, McGee stepped out of the car with his arms raised above his head. He was covered by two officers with handguns and as stated above several other officers were present. (Doc. 12, ex. D; doc. 17, ex. 1 at 8.) Officer Rackley drew his taser and ordered McGee to the ground. (Id.) Rather than comply with Rackley's order to get on the ground, McGee turned away from Officer Rackley, took off his hat, and put it in his car. While Officer Rackley continued to order McGee to lie on the ground, McGee turned back around to face officer Rackley, this time with his hands at waist level. (Doc. 12, ex. D.) One of the officers yelled, "Check him for a gun. Gun. Gun." (Id.) Immediately thereafter, Officer Rackley deployed his taser, hitting McGee's chest and causing McGee to fall to the ground. (Id.) McGee was then surrounded by officers and ordered to keep his hands where they could be seen and roll on his stomach. At some point after McGee had fallen to the ground, Officer Rackley tased him a second time. (Id.) The officers then handcuffed and arrested him.

The entire interaction, from the point at which Officer Rackley turned on his sirens and signaled McGee to pull over to the point at which the officers arrested McGee lasted only a few minutes. (Id.) Though McGee did not comply with Officer Rackley's order to get on the

ground, he did not at any point during the incident actively resist the officers. (See Doc. 12, ex. D; doc. 17, ex. 1 at 8; doc. 7 ¶ 9.)

McGee alleges that he did not receive proper medical assistance. (Doc. 7 ¶ 14.) The police videotape shows that shortly after the officers handcuffed McGee, the Cincinnati Fire Department responded to the scene with medical equipment and examined McGee. (Doc. 12, ex. D.) The examination is documented in the Fire Department's emergency run report, which states that McGee did not complain of discomfort, that the area affected appeared to be minor, and that no treatment was required. (Doc. 12, ex. E.)

Plaintiff McGee ultimately pled guilty to state charges of cocaine trafficking, carrying concealed weapons, and having a weapon under a disability and was sentenced to two years in the Department of Corrections. (Doc. 12, ex. A-C.) He subsequently filed this civil suit.

## II.     LEGAL STANDARD ON A RULE 12(B)(6) MOTION TO DISMISS

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing the sufficiency of a complaint, the Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This accords with the purpose of Rule 12(b)(6), which the Sixth Circuit Court of Appeals has explained "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). The defendant, as the movant, bears the burden of demonstrating that the plaintiff has failed to state a claim. See Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006).

Therefore, "[o]n a Fed. R. Civ. P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

At the same time, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended upon denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP, 348 F. Supp. 2d 255, 263 (S.D.N.Y. 2004). Finally, the Court must scrutinize with "special care" a motion to dismiss a complaint filed under a civil rights statute. See Perry v. McGinnis, 209 F.3d 597, 603 (6th Cir. 2000).

### III. ANALYSIS

#### A. Plaintiff's Claims Under 42 U.S.C. § 1983 Against the Defendant Officers

Plaintiff alleges that Officers Rackley, Barge, Bode, and Triggs violated his constitutional rights and brings claims of unlawful search and seizure, excessive force, and denial of adequate medical care under 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Thus, to establish a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992). Plaintiff has done so here, claiming that Defendants, under color of state

law, deprived him of rights and privileges secured by the United States Constitution, including the Fourth Amendment right to be free from an unlawful search and seizure and the use of excessive force and the Fourteenth Amendment right of a pretrial detainee to adequate medical care. While § 1983 permits recovery against public officials who violate an individual's civil rights, these officials are often entitled to qualified immunity from individual liability for damages. Defendants argue that such is the case here and that all individual Defendants are immune from suit.

To determine whether the officers are entitled to qualified immunity, the Court employs a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310 (6th Cir. 2005); see also Ruffin v. Nicely, 183 Fed. App'x 505, 512, 2006 WL 1407830, at **5 (6th Cir. May 18, 2006) (applying this two-step analysis to a motion to dismiss § 1983 claims on qualified immunity grounds.) If a plaintiff's allegations fail to state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Mitchell v. Forsyth, 472 U.S. 511 (1985). "The burden of proving that the right was clearly established 'rests squarely on the plaintiff,' " Ruffin, 183 Fed. App'x at 512 (quoting Cope v. Heltsley, 128 F.3d 452, 459 (6th Cir. 1997)).

### 1. Fourth Amendment Right to be Free from Unlawful Search and Seizure

Defendants argue that the Heck v. Humphrey doctrine bars any unlawful search and seizure claim that Plaintiff may have. See 512 U.S. 477 (1994). Plaintiff responds only that this

doctrine does not bar his excessive force claim, but states nothing about an unlawful search and seizure claim. In Heck, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87. Defendants argue that if successful, Plaintiff's unlawful seizure claim would imply that his state conviction is invalid. Indeed, if Plaintiff succeeded on that claim, it would call into question both his arrest and the subsequent search of his car. Accordingly, the Court dismisses Plaintiff's unlawful seizure claim. See Fox v. Michigan State Police Dept., 173 Fed. App'x 372, 377 (6th Cir. 2006); Cummings v. City of Akron, 418 F.3d 676, 682-83 (6th Cir. 2005).

### 2. Fourth Amendment Right to be Free from Excessive Force

As stated above, in determining whether the Defendants are entitled to qualified immunity as to Plaintiff's excessive force claim, the Court must first decide whether, based on the facts alleged in Plaintiff's complaint and as shown in the public records considered by the Court, a constitutional violation has occurred. The Supreme Court has interpreted the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable seizures," as providing the right to be free from excessive force. Graham, 490 U.S. at 386. Courts must therefore analyze claims that law enforcement officers have used excessive

force in the course of an arrest using the Fourth Amendment's "reasonableness" standard. Id. at 395. The reasonableness test is not capable of mechanical application but requires careful application of the facts of the case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. In other words, a court must "ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." Kostrzewa v. City of Troy, 247 F.3d 633, 639 (6th Cir. 2001) (reversing the district court's ruling that granted defendants' motion to dismiss, finding that the complaint stated a legally sufficient claim of excessive force and that the officers were not entitled to qualified immunity).

In this case, the relevant facts as alleged in Plaintiff's complaint are that the Defendant Officers, acting under color of state law, used a taser against Plaintiff to effectuate his arrest (Doc. 7 ¶¶ 3, 6.) Plaintiff also alleges that he "did not become violent, threatening or combative," that he "did not physically resist or assault the defendants in any way," and that he was not at any time "a threat to himself or others." (Id. ¶¶ 7-9, 15.)[3] The records submitted by both parties do not contradict Plaintiff's allegations. Instead, they supplement the facts the Court may consider. The records show that the officers pursued Plaintiff because they received information that he had just sold illegal drugs to a confidential police informant. As described above, the police video shows that when Officer Rackley, who was driving directly behind

---

[3] In his complaint, Plaintiff characterizes the officers' actions as "excessive force" and states that the force used by the officers "was unnecessary, unreasonable and excessive." (Doc. 7 ¶¶ 6, 9, 10, 17.) However, because such allegations amount to conclusions of law, the Court need not accept those statements as true. See Morgan, 829 F.2d at 12.

Plaintiff in a residential area, turned on his lights and siren to pull Plaintiff over, Plaintiff continued driving and did not stop until another officer stepped in front of Plaintiff's car with his weapon drawn. At that point, Plaintiff got out of his car, and though he did not actively resist the officers, he also did not comply with Officer Rackley's order to get down on the ground. There were several officers present and the situation did appear to be somewhat chaotic. Officer Rackley did not fire his taser at Plaintiff until after one of the other officers shouted, "Check him for a gun. Gun. Gun." Officer Rackley then tased Plaintiff a second time mere seconds after the first charge.

The Court finds that the officers actions, under the circumstances, were not so unreasonable as to amount to excessive force in violation of the Fourth Amendment. The facts show that the officers were attempting to arrest McGee for fairly serious criminal activity, that at least initially McGee attempted to evade the officers, and that once stopped McGee failed to comply with Officer Rackley's instruction to him to get down on the ground.

There exist a multitude of cases in which courts have held that the use of non-deadly force, such as pepper-spray or a taser, to subdue a defendant who is armed or who poses an immediate threat does not amount to excessive force. See, e.g., Gaddis ex rel. Gaddis v. Redford Tp., 364 F.3d 763, 774-75 (6th Cir. 2006) (holding that the officer's use of pepper spray against an armed suspect who was resisting arrest was reasonable). While McGee had not brandished a weapon in this case, Officer Rackley had reason to believe that he posed a threat. Because the officers had information McGee had recently sold illegal drugs, the officers also had reason to believe that McGee was armed and possibly dangerous. See, e.g., U.S. v. Richardson, 40 Fed. App'x 7, 13, 2002 WL 261824, at *4 (6th Cir. Feb. 21, 2002) (noting that "Officers who rely on

9

their experience and training in concluding that weapons are frequently used in drug transactions act reasonably when the officers use intrusive force to stop a drug suspect." (internal quotations omitted)); U.S. v. Heath, 259 F.3d 522, 530 (6th Cir. 2001); U.S. v. White, 53 F.3d 332, 1995 WL 244069, *4 (6th Cir. April 26, 1995) (finding that "[i]n light of the drug activity that was taking place at the house [where the officers found the defendant] and the common knowledge that individuals involved in buying and selling drugs often carry guns, it was reasonable for the officers to fear that [the defendant] could be carrying a gun").

Moreover, McGee's actions after exiting his car were not such as would dispel any belief the officers held that he may have been armed. In particular, the Court notes McGee's act of reaching into his car while ignoring Officer Rackley's orders to get down on the ground. While ostensibly McGee only reached into his car to place his hat inside, the officers could not have know his motive at the time and could reasonably have suspected that McGee reached into the car to retrieve a weapon. Officer Rackley did not deploy his taser until after McGee failed to comply with his instruction to get down on the ground and another officer shouted "Check for a Gun. Gun. Gun." Under the circumstances, a reasonable officer may have believed that McGee was indeed carrying a weapon and that the use of the taser was warranted to avoid potential violence.[4] See, e.g., Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 688 (6th Cir. 2006)

---

[4] Plaintiff argues that the CCA's finding that Officer Rackley's use of his taser against Plaintiff violated Cincinnati Police Department procedure on use of force demonstrates that Officer Rackley used excessive force against Plaintiff. (See doc. 17, ex. 1 at 8.) However, the CCA's finding is not dispositive. A city's police department may choose to hold its officers to a higher standard than that required by the Constitution without being subject to or subjecting their officers to increased liability under § 1983. Violation of a police policy or procedure does not automatically translate into a violation of a person's constitutional rights. Smith v. Freland, 954 F.2d 343, 347-48 (6th Cir. 1992).

(holding that the defendant officers' use of mace to incapacitate a woman who had allegedly jumped bail and who refused to comply with the officers' orders to come out of a closet where she was hiding did not amount to excessive force); Kellough v. Bertrand, 22 F. Supp. 2d 602, 608 (S.D. Tex. 1998) (holding that where the defendant officers suspected the plaintiff was a suspect in an armed robbery, "[e]ven accepting as true Plaintiff's allegation that he exited his vehicle in a nonthreatening manner, his refusal to follow Defendants' instructions to go to the ground would probably justify a reasonable officer's decision, in light of the circumstances, to employ some force to take him to the ground").

Even if the Defendants did use unreasonable force in arresting Plaintiff, Defendants would nonetheless be entitled to qualified immunity because it has not been clearly established that the use of nonlethal force under these circumstances violates the Fourth Amendment. Generally speaking, the Fourth Amendment right to be free from excessive force in the context of a seizure is clearly established. See Saucier v. Katz, 533 U.S. 194, 201-02 (2005); Adams v. Metiva, 31 F.3d 375, 386-387 (6th Cir. 1994); Belford v. City of Akron, No. 5:05cv2650, 2006 WL 2381507, at *5 (N.D. Ohio Aug 16, 2006). However, the Supreme Court has held that for the purposes of qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

With regard to the use of non-lethal force, the unconstitutional use of gratuitous force against a helpless and incapacitated suspect has been clearly established. See Phelps v. Coy, 286 F.3d 295, 302 (6th Cir. 2002). The Sixth Circuit has also held that "the use of a taser in order to avoid a dangerous situation or the resort to even greater force [does] not violate clearly established law." Caldwell v. Moore, 968 F.2d 595, 600 (6th Cir. 1992) (applying Russo, 953 F.2d at 1044-45). However, situations such as that at issue in the instant case, where an officer tases an individual who fails to comply with the officer's orders and who the officer has reason to believe is armed, fall into a grey area about which there does not appear to be clearly established law regarding the appropriate use of force. Indeed, Plaintiff does not cite one case in which a court has found the use of a taser unconstitutional under similar circumstances. Accordingly, Defendants are entitled to qualified immunity as to Plaintiff's excessive force claim.

### 3. Fourteenth Amendment Right to Adequate Medical Care

Defendants are also entitled to qualified immunity as to Plaintiff's claim that he was denied proper medical care. Plaintiff alleges that he suffered physical and psychological harm as a result of Defendants' actions. (Doc. 7 ¶ 10.) Plaintiff also alleges that "[d]uring the time he was in custody, Plaintiff was not given proper medical assistance by Defendant or its agents, employees to care for his injuries." The police video and City of Cincinnati Fire Department emergency run report, on the contrary, shows that Cincinnati fire fighters did examine Plaintiff shortly after he was tased and determined that Plaintiff did not complain of discomfort and did not require treatment. Defendants move to dismiss this claim on qualified immunity grounds, and Plaintiff offers no response.

The Fourteenth Amendment guarantees protection to individuals against arbitrary action of the government. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citing Collins v. Harker Heights, 503 U.S. at 129). The cognizable level of executive abuse of power is that which "shocks the conscious." Id. The United States Supreme Court has held that "deliberate indifference" to the serious medical needs of pretrial detainees is sufficiently shocking to constitute a substantive due process violation. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976). The deliberate indifference standard requires that the defendants knew of and disregarded a substantial risk of serious harm to a detainee's health and safety. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).

In the instant case, Plaintiff does not allege facts that if true would suggest that the Defendant Officers acted with deliberate indifference to his medical needs. Moreover, Plaintiff fails to show that the medical attention provided violated any clearly established right. Accordingly, the Court dismisses Plaintiff's claim of inadequate medical care.

**B. Section 1983 Claims Against the Cincinnati Police Department**

Defendants move to dismiss all claims against the Cincinnati Police Department on the grounds that a department of a municipality does not have the legal capacity to be sued. Indeed, the Sixth Circuit has held that a police department is not a legal entity subject to suit under § 1983. See Rhodes v. McDannel, 945 F.2d 117, 120 (6th Cir. 1991). Plaintiff's § 1983 claims against the Cincinnati Police Department are therefore dismissed.

**C. State Law Claims**

As the Court has dismissed all of Plaintiff's federal claims, the Court may and does decline to exercise jurisdiction over Defendant's state law claims.  <u>Musson Theatrical, Inc. v. Federal Exp. Corp.</u>, 89 F.3d 1244, 1254-55 (6th Cir. 1996); <u>see</u> also <u>Brandenburg v. Housing Authority of Irvine</u>, 253 F.3d 891, 900 (6th Cir. 2001).  The Court therefore dismisses without prejudice Plaintiff's state law claims.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (doc. 12) is **GRANTED**.  The Court **DISMISSES WITH PREJUDICE** all of Plaintiff's federal civil rights claims brought under 42 U.S.C. § 1983, and **DISMISSES WITHOUT PREJUDICE** Plaintiff's remaining state law claims.

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge